FREDERICK C. BRAEUTIGAM, appellant,

*v.*

ABRAHAM EDWARDS et al., respondents.

</div>

An offer made by one party and accepted by the other, which does not embrace the whole subject-matter in regard to which they intended to bargain, it being apparent that their minds did not come together, does not constitute such a contract as will be enforced in equity.

On appeal from a decree advised by Vice-Chancellor Bird, whose conclusions are as follows:

This bill is filed by one of three partners, to enforce an alleged agreement between the complainant and the other two, of the sale of his interest in the concern to them. Two defences are put in to this—first, that such a sale works a dissolution, which, under the articles, can only be done in and through the court; and, second, that the complainant is not entitled to the relief he asks, because he is not willing to comply with the terms of the agreement of sale in their true spirit and meaning.

I think the first defence cannot prevail. I cannot understand that parties able to contract can place themselves in any legal relation to each other, by an agreement that they cannot, by agreement, dissolve or abandon, or release each other from; the mutual consent which creates may destroy.

Is the second point well laid? There was an offer, on the part of the defendants to the complainant, to buy his interest at a price named, or to sell their interests to him at the same rate. What were the true spirit and meaning of that offer, as to the interests sold and the payment? Did the defendants offer to buy the interest of the complainant for $5,500 in cash, or to allow him that by way of settlement? The defendant Edwards insists that the latter was their offer, and nothing more. He says that the complainant and Taylor, the other defendant, each owed him $2,500 on another agreement, which became part of the articles of copartnership, and that he has a right to set that up against the claim of the complainant for this purchase-money. A brief statement will lead the mind to a proper conclusion: Edwards owned two patent rights. He agreed to sell two-thirds interest in them to complainant and to Taylor, the other defendant, for the sum of $10,000, of which $2,000 was to be paid in cash, $2,000 in three months and $1,000 in four, and the balance of $5,000 was "to be paid out of the proceeds of said business, said payments commencing with its business of the second year, and not less than twenty-five per cent. of the whole sum shall be paid yearly, until the said sum of $5,000

shall be fully paid; and should the gross profits of the business of the second year amount to $8,000, then, in that case, the said Edwards is to be allowed, by said Braeutigam and Taylor, legal interest on said sum of $5,000, to be paid out of their share of the profits of said business." Before the "second year" thus referred to began to run, Edwards and Taylor wrote to complainant this letter:

"*My Dear Sir*—Returning from Philadelphia, this evening, I have conferred with Mr. Taylor, and find him indisposed to sell his quarter at the price suggested by me to him, in my note of Monday evening last.

"And, upon consultation, we have concluded to offer you the three undivided quarter interest at the price of five thousand five hundred dollars each, or we will jointly pay you that sum for your quarter interest."

The complainant declined to buy, but accepted the offer made to buy his one-quarter interest, by letter. The sale was therefore complete; either party could enforce it.

Now, the defendants insist that the complainant must allow the $2,500, one-half of the $5,000 which he and Taylor agreed to pay Edwards, and that he is only entitled to $3,000 in cash, under the offer to purchase his interest.

I cannot so read or interpret this contract. How was the $5,000 still due to be paid? Out of the business of the second year; that was the agreement. At the time of the sale of the complainant's interest, the second year had not commenced to run. The undoubted understanding of the parties was to make that $5,000 out of the business. Most clearly, whether there was any personal liability or not for this $5,000, the business was made liable therefor. It was expected to come out of the business. It was secured by an agreement to re-assign the interest purchased, and by the further agreement to forfeit all the interest in the patents purchased, as well as money paid (short of the whole amount due), in case of non-payment of any one of the stipulated installments.

The absolute sale of all the complainant's interest at the date of his acceptance, left all this supposed profit in the business. Whether more or less, it passed to the vendees. No part of it

remained in the complainant. Therefore, the claim that this whole interest had passed to the complainant for a consideration fully paid and adjusted as to part, and not as to all, and that a part of the consideration moneys is unpaid and is a debt still due and owing from complainant to Edwards, is not a fair and full statement of the question. I think the parties agreed, not that complainant should be liable to pay the last $5,000, or any part of it, but that the business should be liable therefor. Plainly, to my mind, that $5,000 was still in the business, or supposed to be. It is equally plain that if the business had been interrupted and broken up before the commencement of the said *year*, Edwards could not have enforced payment of the $5,000 in a court of equity, because he had expressly agreed to look to the business for payment.

Then, again, it is urged that payment out of the business meant payment out of the patents, or stock on hand, or capital, or any implements of trade belonging to the copartnership. I think there is no rule of interpretation that sustains this view. The parties did not so intend, for the complainant and Taylor already, by and in the contract under which they purchased the two-thirds of the patents, had agreed to assign all their interests therein, and to permit Edwards to hold them as his absolute property, as security for the payment of the price. They did not so intend, for, in the same paper, they speak of business and profits, and not of stock, or patents or implements of trade. Besides, business does not mean stock, or machinery, or capital and the like. While business cannot be done without these, in commercial language it is as distinct from them as labor is from capital. In speaking of the business that may be done by a merchant, banker or railroad company, the mind does not contemplate or dwell upon the character or quality of the means used, but of the operations, whether great or small, complex or simple, numerous or few, for one or the other of these conditions may arise from much or little stock or capital. In other words, "business" does not mean dry-goods, nor cash, nor iron rails and coaches. Business is not these lifeless and dead things, but the activities in which they are employed. When in motion, then the owners

are said to be in business; and then it is that merchants and others speak of the *profits* of the business.

Again, the defendants did not so intend, because they said in their offer, "*we* will *jointly* pay you that sum for your quarter interest." The promise was from *both* to *pay*.

Besides, as appears from the testimony of Mr. Edwards, he so understood it afterwards. He says:

"In the mean, the fifty-five hundred dollars proper was accepted by him, and we offered Mr. Braeutigam twenty-five hundred dollars and one joint paper—Mr. Taylor and I—in two notes of fifteen hundred dollars each."

I think there should be a decree dissolving said copartnership, and decreeing that the said defendants pay to said complainant the sum of $5,500, with interest from the 13th of October last, with costs, and I shall advise accordingly.

*Mr. Chilion Robbins*, for appellant.

*Mr. J. S. Applegate*, for respondents.

The opinion of the court was delivered by

VAN SYCKEL, J.

On the 19th of December, 1881, the complainant and defendants entered into a copartnership for the manufacturing of certain articles under two patents owned by Edwards, the latter having one-half interest in the business and each of the other partners one-quarter interest. The partners were to make contributions of the necessary capital for prosecuting the business in proportion to their interest in the firm.

In the articles of copartnership it was stipulated that dissolution of the partnership could only be had by legal proceedings or the mutual division of the territory covered by said patents, according to and in proportion to the interest held; and that on the dissolution of said copartnership, either party might make, in writing, an offer to the others of the price at which he would

Braeutigam *v.* Edwards.

buy the interest of the others or sell to the others his own inter-
est; that the other party, within twenty days, should signify his
election whether he would buy or sell at the price named, and if
he failed to do so, by notice, in writing, within that time, the
party making such offer might, within ten days thereafter, buy
or sell, at his own election, according to his offer.

By an agreement, in writing, between the same parties, of even
date with the articles of copartnership, it was set forth that Edwards
had sold to Braeutigam and Taylor each a one-fourth interest in
said patents for the sum of $10,000, to be paid to said Edwards
by them as follows: the sum of $2,000 in cash, the further sum
of $2,000 in three months from date, the sum of $1,000 in four
months from date, and the balance to be paid out of the proceeds
of the business, commencing with the business of the second year,
and not less than twenty-five per cent. to be paid yearly until the
said sum of $5,000 was fully paid.

Subsequently, Edwards invented a new trap and requested
Braeutigam to purchase an interest in it, which the latter declined
to do. Afterwards the following letter was sent to Braeutigam:

"ASBURY PARK, October 13th, 1882.

"*My Dear Sir*—Returning from Philadelphia this evening, I have conferred
with Mr. Taylor and find him indisposed to sell his quarter at the price sug-
gested by me to him in my note of Monday evening last, and upon consulta-
tion we have concluded to offer you the three undivided quarter interest at the
price of five thousand five hundred dollars each, or we will jointly pay you
that sum for your quarter interest.                    Yours truly,

"A. EDWARDS.

"F. C. BRAEUTIGAM.                                       D. H. TAYLOR."

To this letter Braeutigam replied as follows:

"ASBURY PARK, October 17th, 1882.

"*Messrs. A. Edwards and D. H. Taylor:*

"*Gentlemen*—Your proposition, dated October 13th, offering to sell me the
three undivided quarter interest for the sum of five thousand five hundred dol-
lars each, or to pay me five thousand five hundred dollars for my quarter
interest. I decline to buy your interest, therefore accept your offer to buy my
interest at the price stated above.                    Respectfully,

"F. C. BRAEUTIGAM."

After this acceptance was communicated to the defendants, the complainants called upon them and demanded payment of the said sum of $5,500, and asked to have the partnership dissolved. Edwards insisted that, according to the terms of the offer, the sum of $2,500 (one-half the sum still due him for the patents) should be deducted from the price agreed to be paid to the complainant, and he therefore refused to pay him more than $3,000 on the adjustment of the matter. Therefore, the complainant filed his bill to compel the defendants to pay him the said sum of $5,500, and for a dissolution of the partnership.

The difficulty arises from the fact that the dissolution was agreed upon before the commencement of the second year of the partnership business, and both the offer and acceptance are silent as to the mode in which the sum of $5,000 due to Edwards for the patents is to be adjusted.

The proposition of Edwards was to give or take an equal sum. In determining what he meant by the offer, it must be considered that he held a half interest in the firm, with a right to receive and have from the other members the sum of $5,000, the balance of the purchase price for the patents; and they held each a quarter interest, with the obligation resting on them to pay Edwards the said sum out of their share of the proceeds of the business after the first year. It is manifest, therefore, that if Edwards's offer is construed as a proposition to give the complainant the same sum for his quarter interest that Edwards would take for a like interest, including his interest in the debt due him, it was not an offer to give or take an equal sum, but was an offer to give the complainant $2,500 more for his quarter interest than Edwards would have received for a quarter interest if the complainant had elected to purchase. It is true that Edwards, in his proposition, did not say that the $2 500 due him from the complainant, out of future proceeds, was to be deducted, and the complainant might therefore well have been led to think that he was to receive the full sum of $5,500; but it is also apparent that Edwards understood it otherwise. It is a case in which the whole subject-matter about which the parties dealt, was not embraced in the offer and acceptance. It was an incom-

plete bargain; the minds of the parties did not come together; they misapprehended each other, and therefore there is no bargain which equity should enforce.

But if the agreement was to the effect claimed by the complainant, a case of indebtedness suable at law is presented; the transaction, then, is without any equitable feature.

The decree below should be reversed and the bill dismissed, without costs.

For affirmance—MAGIE, REED—2.

For reversal—THE CHIEF-JUSTICE, DEPUE, DIXON, KNAPP, PARKER, SCUDDER, VAN SYCKEL, CLEMENT, COLE, PATERSON, WHITAKER—11.